# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ORLANDO RESIDENCE, LTD,

                **Plaintiff,**

    **vs.**

GP CREDIT CO., LLC;
NASHVILLE LODGING COMPANY;
KENNETH E. NELSON;
SUSAN B. NELSON;
HAYVENHURST PENSION &
PROFIT SHARING PLAN;

                **Defendants.**

---

                                      **Case No. 04-C-439**

GP CREDIT CO., LLC.,

                **Counterclaimant-**
                **Third Party Plaintiff,**

**vs.**

ORLANDO RESIDENCE LTD.,

                **Counterclaim Defendant,**

ORLANDO RESIDENCE GENERAL,
SAMUEL A. HARDAGE,

                **Third Party Defendants.**

---

# DECISION AND ORDER

---

*Background*

Plaintiff Orlando Residence, Ltd. ("Orlando Residence") filed this action against defendants GP Credit Co., L.L.C., ("GP Credit"), Kenneth Nelson ("Nelson"), Susan B. Nelson ("Susan N."), – Nelson's wife – and Hayvenhurst Pension & Profit Sharing Plan ("Hayvenhurst"), (collectively "Original Defendants") in the Tennessee Chancery Court for Davidson County. The Original Defendants removed the action to the United States District Court for the Middle District of Tennessee ("Tennessee District Court") relying upon 28 U.S.C. § 1332, which affords subject matter jurisdiction over civil actions in which the plaintiffs and the defendants are citizens of different states and the plaintiffs seek damages in excess of $75,000, exclusive of interest and costs.

Subsequently, upon the motion of the Original Defendants, the action was transferred to this district pursuant to 28 U.S.C. § 1404(a). The action was randomly assigned to this Court. Orlando Residence filed an amended complaint ("complaint") on November 4, 2004, which (among other changes) added Nashville Lodging Company ("Nashville Lodging") as a defendant. (The five defendants named in the amended complaint are referred to collectively as "Defendants.")

This action is a sequel to *GP Credit Co., L.L.C. v. Orlando Residence, Ltd.*, No. 01-C-0693 (E.D. Wis.) (*GP Credit I*), an action presided over by United State District Judge Lynn Adelman. The appeals court[1] upheld the court's determinations that pursuant to 28 U.S.C. § 1655 it had *in rem* jurisdiction over the res – an action brought by Nashville Lodging against an unrelated third party Metric Partners Growth Investors, Inc. ("Metric") – and that Orlando Residence had no lien on the "chose in action."[2] *GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976, 981-82 (7th Cir. 2003). The appellate court also upheld the court's determination that GP Credit acquired clear title to the chose in action when, having foreclosed against Nashville Lodging, GP Credit purchased all of Nashville Lodging's property at the foreclosure sale. *Id.* at 982-83.

---

[1]The appeals court noted that the primary jurisdiction issue arose in a context of "daunting complexity." *GP Credit Co.*, 349 F.3d at 978. A sense of the factual complexity is imparted by the appeals court's description of the context, which indicated was "ruthlessly" simplified:

> Back in 1992, the defendant, Orlando, sued the Nashville Lodging Company (NLC) in a Tennessee state court in a dispute over a hotel. After a protracted proceeding, a judgment for $800,000 was entered in Orlando's favor in September 2000. The previous year NLC had granted a security interest to the plaintiff in the present case, GP Credit, in "any and all personal property" owned by NLC. (It had done that to secure a $1 million loan that it had obtained from GP Credit.) NLC's personal property included a lawsuit that it had brought against a company called Metric, coincidentally involving the same hotel as Orlando's suit against NLC. NLC's suit against Metric was and is pending in a Tennessee state court, which when GP Credit obtained its security interest had determined Metric's liability to be at least $5 million but had not, and still has not, rendered a final judgment, for reasons that are unclear. In May 2001, which is to say after Orlando had obtained its judgment against NLC in the Tennessee court, GP Credit, claiming that NLC had failed to repay the $1 million loan, foreclosed its security interest in NLC's personal property and at the foreclosure sale bought all that property, including, therefore, NLC's suit against Metric. Three months later, Orlando persuaded the Tennessee trial judge who had rendered judgment in its favor against NLC to appoint a receiver to collect and hold, pending the final resolution of the Metric suit, any proceeds of the suit that GP Credit, as NLC's successor in interest, might receive, so that there would be money available to satisfy Orlando's judgment. And by this time Orlando had registered the judgment in the county in which it had been rendered, served on NLC a writ of execution of the judgment, and moved under Tennessee's postjudgment collection statute to subject NLC's assets to satisfaction of the judgment, a motion that the Tennessee trial judge denied, however.

*Id.*

[2]"One form of intangible property is a 'chose in action,' which in its classic sense is a legal claim, that is, something on which an 'action' (a lawsuit) might be founded, such as a right to recover a debt." *Id.* at 980 (citations omitted).

### Claims in This Action

In this action, Count I of Orlando Residence's amended complaint ("Complaint") entitled "Fraudulent Transfer," alleges that Nelson and Nashville Lodging engaged in fraudulent transfers to Susan N. and to GP Credit to avoid payment of Orlando Residence's judgment. Hayvenhurst, named as a member of GP Credit, is alleged to have knowingly participated in the fraudulent transfers. Count II, entitled "Alter Ego," requests that the Court pierce GP Credit's corporate veil so that Orlando Residence can execute upon GP Credit's assets to obtain satisfaction of Orlando Residence's judgment against Nelson and Nashville Lodging. Orlando Residence seeks compensatory and punitive damages.

GP Credit has a counterclaim and third-party complaint against Orlando Residence, Orlando Residence General ("Orlando Gen.") and Samuel A. Hardage ("Hardage"). GP Credit alleges claims for restitution (First Cause), slander of title (Second Cause), and intentional interference with prospective business relationship (Third Cause), and seeks declaratory and injunctive relief, restitution, and compensatory damages.

### Standing of Dissolved Partnership to Sue

The Court's March 8, 2006, Decision and Order raised a jurisdictional question of standing stemming from Orlando Residence's allegation in its complaint that it is a "dissolved Florida limited partnership." (Decision and Order, 3.) (Docket No. 245.) Relying upon the third catch-all sentence of Rule 17(b) of the Federal Rules of Civil Procedure, which provides that the capacity of a partnership or other unincorporated association to sue or be sued is "determined by the law of the state in which the district court sits," the Court stated that since

it sits in Wisconsin, the law of Wisconsin would govern the capacity of Orlando Residence to sue. (*Id.* at 1.) The Court directed Orlando Residence to provide a brief statement regarding Orlando Residence's capacity to sue and provided an opportunity for the Defendants to respond to that statement. (*Id.* at 4-5.) The parties complied.

Orlando Residence asserts that because the matter was transferred from the district court for the Middle District of Tennessee, pursuant 28 U.S.C. § 1404, the Court must look to the substantive law of the State of Tennessee as would a judge in the transferor court. (Orlando Residence's Br. Statement Regarding Standing, 3 (citing *Van Dusen v. Barrick*, 376 U.S. 612, 637 (1964); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993).) (Docket No. 246.)[3]

The Defendants do not contest Orlando Residence's standing to litigate this matter, but they do not concede that Orlando Residence is a limited partnership, dissolved or otherwise. (See Defs.' Resp. Pl.'s Br. Statement Regarding Standing, 1.) (Docket No. 248.) The Defendants indicate that there are at least two partnerships named Orlando Residence – one formed in 1982 and one formed in 1985. The Defendants outline the nature of these entities in two pages of their statement on standing (which also relies on briefs previously filed by the Defendants). The Defendants assert that the plaintiff in this action is the Orlando Residence partnership formed in 1985, which is a general partnership. The Defendants maintain that when the 1985 Orlando Residence partnership was formed all of its partners were residents of Kansas,

---

[3]Because the Court's docket for this action includes a large number of documents, for ease of reference, the Court has included the docket number with its first citation to a document.

the partners are currently residents of Florida, Kansas, and California, and there is no evidence that the 1985 Orlando Residence general partnership has been dissolved.

In addition, the Defendants do not agree that Tennessee law controls the question of Orlando Residence's ability to sue during its winding-up period stating that "one cannot chose the law of his liking by filing in a court which lacks jurisdiction." The Defendants rely on briefs filed by GP Credit regarding the choice of law analysis. (*See* Defs.' Resp. Pl.'s Br. Statement Regarding Standing, 5 n.7 (citing GP Credit's Br. Supp. Mot. Partial S.J. Claims of Slander of Title and Interference with Prospective Contractual Relationship ("GP Credit's Br. Supp. Mot. Partial S.J."), 12-14 (Docket No. 162); GP Credit's Reply Supp. Partial S.J. on Claims of Slander of Title and Interference with Prospective Contractual Relationship ("GP Credit's Reply Supp. Partial S.J."), 4-5 (Docket No. 196); and GP Credit's Resp. Opp'n Orlando Residence's Mot. S. J. GP Credit's Countercl. Slander of Title & Interference with Prospective Contractual Relationship, 11-12 (Docket No. 142).) The Defendants contend that substantive Wisconsin law governs this action, because the transferring court lacked personal jurisdiction over the Original Defendants.

In raising the issue of Orlando Residence's standing, the Court ventured into an area of apparent (if not actual) factual complexity and considerable divergence of opinion. The Defendants' argument that the plaintiff is not what it purports to be – a dissolved Florida limited partnership – is novel and interesting. However, at this juncture, the Court accepts the complaint's identification of the plaintiff – a dissolved Florida limited partnership.

Both Tennessee and Wisconsin have adopted the Revised Limited Partnership Act. Under Tenn. Code Ann. § 61-2-901(a)(1) and Wis. Stat. § 179.81, the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners. At the time this action was commenced,[4] Fla. St. § 620.159(2) (2004) provided:

> Upon dissolution of a limited partnership and until the filing of a certificate of cancellation, persons winding up the limited partnership's affairs may, in the name of, and for and on behalf of, the limited partnership, prosecute and defend suits, whether civil, criminal, or administrative, gradually settle and close the limited partnership's business, dispose of and convey the limited partnership's property, discharge the limited partnership's liabilities, and distribute to the partners any remaining assets of the limited partnership, all without affecting the liability of limited partners.

Therefore, at this juncture, the Court is satisfied that Orlando Residence has the requisite standing to litigate this action. *See In re Cochrane*, 273 B.R. 272, 276 (Bankr. M.D. Fla. 2001).

### Applicable Substantive Law

However, the question of whether this Court should apply Tennessee or Wisconsin substantive law (including on the choice of law determination) is likely to persist in this action. Therefore, the Court has considered the arguments in GP Credit's briefs upon which the Defendants rely. The Defendants assert that the general choice of law rule of *Van Dusen*

---

[4]Effective January 1, 2006, Fla. Stat. § 620.159 was repealed by 2005 Fla. Laws, ch. 2005-267, § 25, and Fla. Stat. § 620.1803 was added by 2005 Fla. Laws, ch. 2005-267, § 17, effective January 1, 2006.

does not apply, unless the case was originally filed in a permissible forum.[5]  (GP Credit's Br. Supp. Mot. Partial S. J., 12-14 (citing *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993); *Trierweiler v. Croxton & Trench Holding Co.*, 90 F.3d 1523, 1532 (10th Cir. 1996); *Greehan v. Monahan*, 382 F.2d 111, 114 (7th Cir. 1967)).)  The Defendants maintain that they all objected to personal jurisdiction and that Orlando Residence never proved personal jurisdiction.  Therefore, the Defendants assert that Wisconsin choice of law rules apply.

In its response, Orlando Residence concedes that the *Van Dusen* exception does not apply when a case has been transferred by a transferring court which lacked personal jurisdiction over the defendants.  (See Orlando Residence's Reply Br. Supp. Mot. S.J., 4-5.) (Docket No. 165.)  However, Orlando Residence maintains that the exception does not apply because the case was transferred to this district pursuant to 28 U.S.C. § 1404(a), not 28 U.S.C. § 1406.  Orlando Residence suggests that the Court should infer that the Tennessee district court found that it had personal jurisdiction. Invoking judicial estoppel, Orlando Residence asserts that the Original Defendants are precluded from changing their positions regarding personal jurisdiction because the Defendants moved for transfer under Section 1404(a) and argued in favor of the transfer motion that the question of personal jurisdiction "would become moot, as all the defendants concede that the transferee court, Wisconsin District Court, will have personal jurisdiction over them."  (*Id*. at 5 (citing Bulso Decl. (Docket No. 166), Ex. 1 (Mem. Facts and Law Supp. Defs.' Mot. Transfer), 12).)  Orlando Residence also maintains that, because GP

---

[5]*Gonzalez v. Volvo of Am. Corp.*, 734 F.2d 1221 (7th Cir. 1984), is also cited by the Defendants, but, that decision was "superceded" by a subsequent decision. *See Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 297 (7th Cir. 1985); *See also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) (stating that *Gonzalez*, 734 F.2d at 1221, was vacated.)

Credit is trying to establish an exception to the *Van Dusen* rule, GP Credit has the burden of showing that the exception applies and it has not done so.

          *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993), applicable to the transferring Tennessee district court, explains that a district court's authority to transfer venue is based on two statutes, 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). Section 1404(a) permits a change of venue for the convenience of parties and witnesses. *Id*. However, a transfer under section 1404(a) may **not** be granted when the district court does not have personal jurisdiction over the defendants. *Id*. (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980) (emphasis added)). Section 1406(a) allows a district court to grant a change of venue when venue was improper in the original forum. *Pittock*, 8 F.3d at 329. Specifically, section 1406(a) provides that a district court with a case "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id*. Unlike section 1404(a), however, section 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case. *Id*. (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (utilizing section 1406(a) to transfer a case where there was both improper venue and lack of personal jurisdiction in the transferor forum)).

          The Tennessee district court transferred venue under Section 1404(a). (Order at 1 (M.D. Tenn. April 19, 2004) (Docket No. 28).) In its terse order, the Tennessee district court noted that under section 1404(a), a district court may transfer any civil action to any other

-9-

district or division where it could have been brought. *Id*. The court held that the action was sufficiently related to *GP Credit I* such that the interests of justice warranted its transfer. *Id*.

The Tennessee district court's § 1404(a) transfer decision was controlled by *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980).[6] *Martin* holds that application of section 1404(a) is limited to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper. See also, 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 n.12 (2d ed. 1986).

In their motion to transfer brief, the Original Defendants raised the fact that they had denied that the Tennessee district court had personal jurisdiction over them. (See Bulso Decl. (Docket No. 166), Ex. 1 (Mem. Facts and Law Supp. Defs.' Mot. Transfer), 12). But, neither the Original Defendants nor Orlando Residence mentioned *Martin* or its holding in their briefs. The transfer order did not cite *Martin* or any similar case nor did it explicitly address whether that court had personal jurisdiction over the Original Defendants. Orlando Residence suggests that this Court should conclude that, in granting the motion to transfer under section 1404(a), Judge Campbell implicitly found that court had personal jurisdiction over the Original Defendants. Without more of a foundation, such inference is not plausible.

Orlando Residence also asserts that judicial estoppel precludes the Original Defendants from now raising the issue of personal jurisdiction. Judicial estoppel is an equitable concept designed to prevent perversion of the judicial system. *Allison v. Ticor Title Ins. Co*, 979

---

[6]GP Credit states "*Martin* was superseded by the passage of 28 U.S.C. § 1631 way back in 1982." (GP Credit's Reply Supp. Partial S.J., 4 (citing *Ross v. Colo. Outward Bound Sch. Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987).) The Court's research places the conclusion in doubt. *Roman v. Ashcroft*, 340 F.3d 314, 328-29 n.11(6th Cir. 2004), followed *Ross* **and**, as an alternative basis for its holding, cited *Martin*. *See Id*.

F.2d 1187, 1193 (7th Cir. 1993). *See also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Traditionally, judicial estoppel has been applied when a party prevails in one action and takes a contrary position in a later action. *See Allison*, 979 F.2d at 1193. However, the United States Supreme Court has stated that judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument in another phase of the case." *Pegram v. Herdrich*, 530 U.S. 211, 217 n.8 (2000). *See also In re Hovis*, 356 F.3d 820, 823 (7th Cir. 2004). Although the judicial estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, several factors typically inform the decision whether to apply the doctrine in a particular case:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750-51 (citations and internal quotation marks omitted). *See also Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005). The factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751.

The Defendants have adopted a position in this Court that is clearly inconsistent with the position raised in the Tennessee district court. The Original Defendants asserted before the Tennessee district court that it lacked personal jurisdiction over them, this Court would have personal jurisdiction, and the Tennessee district court's lack of personal jurisdiction would be

moot if the case was transferred here.  Now, the Defendants argue that the issue is not moot and that this Court should find that the Tennessee district court did not have personal jurisdiction over them, and that, therefore, the exception to *Van Dusen* applies and this Court must apply Wisconsin substantive law.  The Original Defendants are contradicting their prior position on personal jurisdiction.

The Original Defendants would obtain an unfair advantage if this Court adopted the Defendants' position that Wisconsin law applies because Orlando Residence never established that the Tennessee district court had personal jurisdiction over them.  Such a holding would deprive Orlando Residence of an opportunity to prove that the Tennessee district court had personal jurisdiction over the Original Defendants.  By prohibiting the Original Defendants from changing positions according to the exigencies of the moment, the integrity of the judicial process will be preserved.  *See New Hampshire*, 532 U.S. at 749-50.  Therefore, judicial estoppel bars the Original Defendants from now arguing that the issue of personal jurisdiction is not moot.  Accordingly, because this action was transferred based on the Original Defendants representation that the issue of personal jurisdiction would be moot, this Court will follow *Van Dusen* and apply the state substantive law which the Tennessee district court would have applied.[7]

### Pending Motions

The factual underpinnings of the case are complex and the case has become mired in motions.  This order addresses a number of pending motions.

---

[7]However, this Court is "usually" free to decide the federal issues in the manner it views as correct without deferring to the interpretation of the transferor circuit.  *See McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001).

The Original Defendants filed a summary judgment motion for dismissal of the complaint as barred by *res judicata* and collateral estoppel. (Docket No. 50.) They also maintain that Orlando Residence has no independent cause of action related to alter ego or piercing GP Credit's corporate veil.

Orlando Residence's response contends that the Original Defendants have overstated the rulings in the *GP Credit I* and have overlooked some basic principles of federal jurisprudence regarding the prior action which involved *in rem*, not *in personam* jurisdiction. Orlando Residence also maintains that its current claims were not compulsory counterclaims under Federal Rule of Civil Procedure 13 in *GP Credit I*. In a supplemental response (Docket No. 68), Orlando Residence argues that in light of its amended complaint (filed within the deadline for filing amended pleadings as set by the Court's August 27, 2004, scheduling order), the Original Defendants' pending dispositive motions are moot.

The Original Defendants filed their motion for summary judgment on September 23, 2004. Orlando Residence filed its response to the summary judgment motion on October 26, 2004. On November 4, 2004, Orlando Residence filed its amended complaint. Orlando Residence filed its reply submissions on November 9, 2004.

The amended complaint supercedes the prior complaint. *See Duda v. Bd. of Ed. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). Thus, the Original Defendants' motion for summary judgment seeks dismissal of a complaint that has been superceded. (The contentions raised in the motion are raised by all defendants in their

motion for partial summary judgment (Docket No. 151).) The Original Defendants' motion for summary judgment is denied as moot.

### The Original Defendants' Motion for a Stay of Discovery and the Defendants' Motion for Stay of Discovery

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Defendants seek a stay of discovery by Orlando Residence on its complaint pending disposition of the Defendants' summary judgment motions for dismissal of the complaint and for dismissal of the complaint for failure to plead with particularity. (Docket No. 54[8] & part of Docket No. 75.) Orlando Residence opposes the motions relying upon paragraph five of the Court's August 27, 2004, scheduling order.

Rule 26(c) of the Federal Rules of Civil Procedure provides that:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) that the disclosure or discovery not be had;
(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

Although both motions for a stay of discovery invoke Rule 26(c), neither motion is accompanied by a certification that the Original Defendants or Defendants have conferred or attempted to confer with Orlando Residence in an attempt to resolve their discovery dispute.

---

[8]While presented in conjunction to the Original Defendants' motion for summary judgment, the motion pertains equally to the Defendants' motion for summary judgment, which in effect replaces the Original Defendants' summary judgment motion.

Such a certificate is explicitly required by Rule 26(c).  *See also* Civil L.R. 37.1 (E.D. Wis.).

Motions that fail to meet the requirements of Civil L.R. 37.1 are summarily dismissed, although

they may be refiled if a party shows compliance with the rules or satisfactorily explains the

previous failure to comply.  *See United States v. Molinaro*, 683 F. Supp. 205, 209 (E.D. Wis.

1988) (addressing Local Rule 6.02 (E.D. Wis.); prior version of Civil L.R. 37.1).  Since neither

motion is accompanied by the required certification, the Court would be well within its

discretion to deny the motions.  However, from review of the discovery-related motions in this

matter it is obvious that the denial of the motions would be an exercise in formalism.  The Court

will address the motions for stay, but cautions the parties that strict adherence to the rules will

be expected, in the future.

Paragraph five of the Court's scheduling order[9] does not preclude a stay of

discovery.  "Trial courts have broad discretion and inherent power to stay discovery until

preliminary questions that may dispose of the case are determined."  *Gettings v. Building

Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003).  Limitations on

pretrial discovery are appropriate where claims may be dismissed "based on legal

determinations that could not have been altered by any further discovery."  *Id*.  (quoting

*Muzquiz v. W.A. Foote Memorial Hosp., Inc*., 70 F.3d 422, 430 (6th Cir. 1995)).  *See also

Builders Assoc. v. Chicago*, 170 F.R.D. 425, 437 (N.D. Ill. 1996) (collecting cases).  A court

---

[9]Paragraph five of the Scheduling Order states:

All requests for discovery shall be served by a date sufficiently early so that all discovery in this case can
be completed no later than August 12, 2005. Neither the pendency of motions nor settlement discussions
shall affect any of the dates set in this action, and neither shall justify delays in the taking of discovery.

(Court's August 27, 2004, Scheduling Order, 2.) (Docket No. 38.)

may also stay discovery while addressing a motion to dismiss for failure to state a claim. *See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 935 (2nd Cir. 1998).

The Defendants' summary judgment motion (Docket No. 151) relies on, among other contentions, *res judicata* and collateral estoppel based upon the litigation in *GP Credit I*. The resolution of the issues related to those doctrines are legal determinations, and would not be impacted by further discovery.

Extensive litigation has preceded this action and discovery is time-consuming and costly to the parties. If Orlando Residence's claims are barred by the prior litigation in *GP Credit I*, extensive discovery and associated costs may be avoided. Therefore, the Defendants have shown good cause for a stay of discovery by Orlando Residence on its complaint until resolution of these summary judgment issues. Likewise, a stay of discovery pending resolution of the Defendants' motion to dismiss is appropriate. Therefore, the Defendants' motions for a stay of discovery by Orlando Residence on its complaint (Docket No. 54 & part of Docket No. 75) are granted until these issues are resolved. *See id*.

### Orlando Residence's Motion to Compel - Answers to Interrogatories & Requests for Production

Orlando Residence filed a motion to compel GP Credit, Susan N., and Hayvenhurst to respond to its first set of interrogatories and requests for production of documents. (Docket No. 86.) The motion is accompanied by a statement as required by Civil Local Rule 37.1, that Orlando Residence attempted, in good faith, to resolve the discovery dispute with the Defendants. (*See* Orlando Residence's Certificate Compliance Civil L.R. 37.1.) (Docket No. 88.) Orlando Residence states that the Defendants have failed to provide

-16-

most of the requested information on the basis that: (1)"the judgment in E.D. Case No.01-C-693" decided the issues presented, and (2) " the complaint fails to plead fraud with particularity."  (Mem. Law Supp. Pl.'s Mot. Compel, 2.)  (Docket No. 87.)

The Defendants oppose the motion as being redundant because of their motions for a stay.  (Defs.' Br. Opposing Pl.'s Mot. Compel, 1.) (Docket No. 96.)  They also indicate that the Court should stay discovery because they have moved to dismiss this action based on its preclusion by *GP Credit I*.  Furthermore, even though Orlando Residence has filed an amended complaint, it has failed, as argued in the Defendants' motion to dismiss, to plead fraud with particularity.

Because, the Court has stayed Orlando Residence's requests for discovery on its complaint pending resolution of the issues of *res judicata*, collateral estoppel, and failure to plead fraud with particularity, Orlando Residence's motion to compel is denied.

### *Orlando Residence's Motion to Compel Regarding Nelson's Deposition*

Pursuant to Fed. R. Civ. P. 37, Orlando Residence requests an order compelling Nelson to reappear for his deposition and awarding $2,035.65[10] in expenses against Nelson's counsel.  (Docket No. 135.)  Orlando Residence argues that at Nelson's March 30, 2005,

---

[10]By its original motion, Orlando Residence sought a total award of $1,298.15 in fees and expenses. (Orlando Residence's Mot. Compel and Award Fees and Expenses, 1 and Attach. Bulso Decl. I ("Bulso Decl. I") ¶¶ 8-10.) (Docket No. 135.) The claimed fees were $737.00 (2.5 hours spent on the initial motion to compel submissions multiplied by the standard and customary $295.00 hourly rate of counsel) and the claimed  expenses were based on the $161.25 cost for the videographer and the court reporter for Nelson's deposition and $499.40 cost of additional airfare for Orlando Residence's counsel to take an earlier airplane flight due to the termination of Nelson's deposition.  The expenses total $660.65.

In its reply memorandum, Orlando Residence indicates that the total award sought, with an additional 2.5 hours spent on the reply brief at counsel's $295.00 standard and customary hourly rate ($737.50 in fees), is $2,035.65.  (Reply Mem. Supp. Mot. Compel, 4.) (Docket No. 168.); (Bulso Decl. II ¶ 2.) (Docket No. 169.) The $2,035.65 award sought consists of $1,475.00 in fees and $560.65 in expenses.  (Bulso Decl. II ¶ 2.)  (Either Orlando Residence intentionally seeks a lesser amount of expenses than incurred or calculated its expenses incorrectly).

deposition, his attorney instructed Nelson not to answer any questions regarding Orlando Residence's claims in this action.  The transcript of Nelson's deposition is attached to the motion.

Briefly described, Orlando Residence states that it produced its Rule 30(b)(6) designee in Milwaukee for deposition only because it could take Nelson's deposition during the same trip.[11]  (Bulso Decl. I ¶ 6.)  The Defendants took their Rule 30(b)(6) deposition of Orlando Residence's designee on March 29, 2005.  (*Id*. ¶ 7.)  Orlando Residence was to take Nelson's deposition on March 30, 2005.  (*Id*.)  But, when counsel for Orlando Residence began to ask questions about the amended complaint, he was told that Nelson would not answer questions about the claims of the amended complaint.  (*Id*.)  Nelson relied on the pending motion for a protective order.  (Nelson Dep. 10-18.)  Nelson's deposition was convened at 8:58 a.m. and ended at 9:29 a.m.  (*Id*. at 1, 18.)  Counsel for Orlando Residence telephoned the Court in an attempt to resolve the discovery dispute.  (Bulso Decl. I ¶7.)  The Courtroom Deputy advised him that the Court was not available and would not return until Monday, April 4, 2005.  (*Id*.)

---

[11]The Defendants cite *Undraitis v. Luka,* 142 F.R.D. 675, 676 (N.D. Ind. 1992) as indicating that as the plaintiff, Orlando Residence was required to come to Milwaukee to be deposed.  The general rule is that a plaintiff may be required to attend a deposition in the district where the case was filed, but a defendant may insist upon being deposed in the district where he resides.  *Id*.  This general principal is based upon the theory that the plaintiff has chosen the forum voluntarily and should expect to appear for any legal proceedings, but that the defendant is an involuntary participant.  *Id*.  (citing 8 Wright & Miller, *Federal Practice and Procedure*, § 2112 at p. 409; *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987); and *Wis. Real Estate Inv. Trust v. Weinstein*, 530 F.Supp. 1249, 1253 (E.D. Wis. 1982).)

However, the principal arises from a plaintiff's selection of the forum.  *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2112 (2d ed. 1994).  Given that the case was transferred to this district pursuant to § 1404 and Orlando Residence did not select this forum, the argument is of "lessened persuasiveness." *Id*.  Federal Rule of Civil Procedure 26(c)(2) permits a district court to regulate discovery by imposing "specified terms and conditions, including a designation of the time and place."  It would have been within the Court's discretion to determine where the Rule 30(b)(6) deposition should be conducted.

In opposition, the Defendants shift the focus. The Defendants attack Orlando Residence for filing the motion, inadequately preparing its witness for the Rule 30(b)(6) deposition, and for filing its fraudulent transfer claims. (Defs.' Resp. Opp'n Orlando Residence's Mot. Compel and Award Fees and Expenses Rule 37, 1-6.) (Docket No. 147.) The Defendants respond to the issues raised by Orlando Residence's motion, by relying on their pending motions for a stay of discovery pending disposition of their motion to dismiss for lack of particularity. (*Id*. at 2, 13.) They also argue that Nelson should not be compelled to appear for a second deposition and, if so, any award of expenses would not be justified. (*Id*. at 8.) They also assert that Orlando Residence seeks deposition costs which are not awardable under Rule 37(a)(4) of the Federal Rules of Civil Procedure. (*Id*. at 10.)

The Court has stayed discovery on Orlando Residence's complaint. Until that stay is lifted, Nelson is not required to submit to a deposition on the claims of Orlando Residence's complaint. Therefore, Orlando Residence's motion to compel is denied. It follows that its request for an award of fees and expenses pursuant to Rule 37(a)(4)(A) is also denied.

However, the Court finds the situation, as described by the motion to compel, troubling regarding the Defendants' counsel's misleading of counsel for Orlando Residence. While attorneys have a duty to act as zealous advocates, they are expected to conduct themselves in a civil and reasonable manner. *See* Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, http://www.ca7.uscourts.gov/Rules/rules.htm#planVII. It appears that counsel for the Defendants mouse-trapped opposing counsel. While availing himself of the advantageous March 29, 2004, deposition location, he surprised counsel for

Orlando Residence the next day by refusing to allow a meaningful deposition of Nelson. The Defendants' motions for protective orders had been pending for months, and certainly, civility would direct that the Defendants apprise Orlando Residence that they intended to make Nelson only available for deposition on the counterclaims. Nelson's counsel could have also filed an expedited non-dispositive motion to quash or for a ruling on its pending motions for a stay (which sought relief under Rule 26(c) and therefore fall within the scope of motions for a protective order despite their title). The Court expects better conduct from counsel. The Defendants' response to the motion to compel also falls short of expectations, because it relies primarily on a counter attack upon Orlando Residence.

The Defendants cite the first sentence of the second paragraph of the advisory committee's notes to the 1993 Amendments to Rule 37(d)[12] which states: "The last sentence of this subdivision is revised to clarify that it is the pendency of a motion for protective order that may be urged as an excuse for a violation of subdivision (d)." Fed. R. Civ. P. 37(d) advisory committee notes to 1993 amendment. But, they omit the remainder of the paragraph which

_____

[12] Rule 37(d) provides:

If a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule . . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

Fed. R. Civ. P. 37(d).

states: "If a party's motion has been denied, the party cannot argue that its subsequent failure to comply would be justified.  In this connection, it should be noted that **the filing of a motion under Rule 26(c) is not self-executing** – the relief authorized under that rule depends on obtaining the court's order to that effect."  *Id*.  (emphasis added.)

The position of the Defendants' counsel at Nelson's deposition and in opposing the motion is in essence that the motions for stay were self-executing.  The Defendants' position that their pending motion provided a basis for counsel's instruction that Nelson not answer questions at the time of the deposition does not reflect the general rule.  *See* 8 Wright, Miller & Marcus, *supra*, § 2035 ("At least with regard to depositions, the order should ordinarily be obtained before the date set for discovery."); *In re River Ridge Ranch, Inc.*, 347 B.R. 65, 69 (Bankr. S.D. Ohio 2006); *In re Lincoln N. Assoc. Ltd. P'ship*, 163 B.R. 403, 409 (Bankr. D. Mass. 1993).

The Defendants cite *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266-67 (10th Cir. 1995) in urging that the proper procedure is to apply for a pre-deposition protective order.  *Dabney* involved a Resolution Trust Corporation ("RTC") witness who was instructed by counsel during a deposition not to answer any questions that involved work product.  After the limited deposition, the defendants filed a motion to compel; the RTC responded with a motion for a protective order.  In analyzing the RTC's improper conduct at the deposition, the court noted that counsel for the RTC admitted that they believed prior to the deposition, in reliance upon a district court's bench ruling in another RTC case, that the work product might foreclose certain lines of questioning and stated that "[t]hus, the proper procedure was to apply for to the

court for a pre-deposition protective order, as was called for by the rules of civil procedure and was done in the [other RTC] case." *Id*. *Dabney* must be read in context – the court was discussing the RTC's improper blanket work product objection at the deposition, as opposed to seeking a court order when they anticipated the ground upon which they would object. The court did not say that a pending motion for a protective order may, necessarily, be relied upon at a deposition as a basis for a refusal to answer.

There may be instances where there has been no time to get a ruling prior to a deposition and the mere motion may be enough. However, to suggest that the pendency of a motion for a protective order is always sufficient grounds for refusal to answer is an overstatement. Furthermore, the strategy used by counsel for the Defendants in arranging the deposition is simply not the type of conduct encouraged by the courts within this judicial circuit.

### Orlando Residence's Rule 56(f) Motion for a Continuance

Orlando Residence also has requested relief pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Orlando Residence seeks a continuance with respect to specific issues raised by the Defendants' summary judgment motion and has submitted an affidavit explaining why the additional discovery is necessary. *See Deere & Co. v. Ohio Gear*, No. 05-1990 , ____F.3d ___, 2006 WL 2473421, *4 (7th Cir. Aug. 29, 2006). Orlando Residence's request is properly supported and is reasonable.

Relying upon its two pending motions to compel, Orlando Residence seeks a continuance of the Defendants' motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Docket No. 185). Orlando Residence contends that, absent

the Defendants' discovery responses with regard to its fraudulent transfer claim, it cannot adequately brief issues raised by the Defendants' partial summary judgment motion (Docket No. 151) regarding the value of assets transferred, when Orlando Residence's causes of action accrued, and to what extent the statutes of limitations (claimed to be applicable by GP Credit), may be tolled. Orlando Residence has submitted an affidavit of counsel in support of its Rule 56(f) motion.

Orlando Residence's Rule 56(f) motion (Docket No. 151) is granted to the following extent. If the Defendants do not prevail on the *res judicata* or collateral estoppel issues raised by their summary judgment motion, the Court will allow Orlando Residence to conduct discovery which is likely to lead to the discovery of admissible evidence regarding the accrual of its causes of action, any tolling of the statute(s) of limitations and the value of transfer of assets. The Court will also allow Orlando Residence to supplement its summary judgment response before the Court addresses the remaining issues presented by the Defendants' summary judgment motion.

### GP Credit's Motion for Entry of Judgment

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, GP Credit seeks the entry of judgment (Docket No. 236) on that portion of its first supplemented counterclaim (Docket No. 139) which relates to the slander of title case bond in the amount of $150,000.

Although Orlando Residence filed a reply to GP Credit's original counterclaim and cross motions for summary judgment are pending, Orlando Residence did not file a reply to the first supplemented counterclaim. However, the Court did not order Orlando Residence

-23-

to do so.  *See* Fed. R. Civ. P. 15(d).  Therefore, Orlando Residence is not in default and GP Credit is not in the proper posture to obtain default judgment.  Therefore, GP Credit's motion for entry of judgment is denied.  (Docket No. 236).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Original Defendants' motion for summary judgment dismissing the complaint (Docket No. 50) is **DENIED**, as moot;

The Original Defendants' and the Defendants' motions to stay discovery by Orlando Residence on its complaint (Docket No. 54 & part of Docket No. 75), are **GRANTED** until resolution of the Defendants' motion for partial summary judgment on the grounds of *res judicata* and collateral estoppel and their motion to dismiss for lack of particularity;

Orlando Residence's motion to compel (Docket No. 86) is **DENIED**;

Orlando Residence's motion to compel and for an award of fees and expenses (Docket No. 135) is **DENIED**.

Orlando Residence's motion for continuance of the Defendants' motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Docket No. 185), is **GRANTED** to the following extent.  If the Defendants do not prevail on their claims of *res judicata* or collateral estoppel, before resolving the remaining issues presented by the Defendants' summary judgment motion, the Court will allow Orlando Residence to conduct discovery which is likely to lead to the discovery of evidence relevant to the statute(s) of limitations, issues of tolling of the statute(s) of limitations, and the value of transferred assets.

Orlando Residence will also be allowed to supplement its summary judgment response before the Court addresses the remaining issues presented by the Defendants' summary judgment motion; and,

GP Credit's motion for judgment (Docket No. 236) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2006.

**BY THE COURT:**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**