**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ORLANDO RESIDENCE LTD,**

                Plaintiff,

    -vs-

**GP CREDIT CO., LLC,**
**NASHVILLE LODGING COMPANY,**
**KENNETH NELSON, SUSAN B. NELSON,**


                Defendants.

--------------------------------------------------------------------      **Case No. 04-C-439**

**GP CREDIT CO., LLC,**

                Counter-claimant-
                Third-Party Plaintiff,

    -vs-

**ORLANDO RESIDENCE LTD.,**

                Counterclaim Defendant,

**ORLANDO RESIDENCE GENERAL,**
**SAMUEL HARDAGE,**

                Third Party Defendants.

---

**DECISION AND ORDER**

---

**Introduction**

The procedural and factual history giving rise to this litigation is extremely complex.

The parties have been litigating in Wisconsin and Tennessee since 1986. Therefore, in the

interests of brevity, the Court will presume familiarity with the procedural and factual background of this case.[1] The task before the Court is complicated enough: sorting through a maze of parties, claims, counterclaims, and motions, not to mention the impact of the ongoing collateral proceedings in Tennessee.

The plaintiff is Orlando Residence, Ltd. ("Orlando"). The defendants are GP Credit Co., LLC ("GP Credit"), Nashville Lodging Company ("NLC"), Kenneth Nelson and Susan B. Nelson (who are husband and wife). GP Credit is also a counter-claimant against Orlando and a third-party plaintiff against Orlando Residence General ("ORL General") and Samuel Hardage ("Hardage").

Orlando's claims are for fraudulent transfer and "alter ego." (Docket No. 67, Amended Complaint). GP Credit has three claims: (1) Restitution; (2) Interference with a Prospective Business Relationship; and (3) Slander of Title. (Docket No. 73, Counterclaims and Third-Party Complaint). GP Credit also seeks to impose liability against Hardage and ORL General for the same claims. (*Id.*)

Eleven (11) motions are currently pending. Three are dispositive with respect to Orlando's claims: (1) defendants' motion for summary judgment dismissing Orlando's claims (Docket No. 151); (2) defendants' motion to dismiss Orlando's amended complaint

---

[1] The interested reader is directed to an array of published and unpublished opinions: *Orlando Residence Ltd. v. GP Credit Co., LLC*, No. 04-C-439, 2006 WL 2849866 (E.D. Wis.); *GP Credit Co., LLC v. Orlando Residence*, 349 F.3d 976 (7th Cir. 2003); *Orlando Residence, Ltd. v. Nashville Lodging Co., et al.*, 2006 WL 1896368 (Tenn. App. 2006); *Nelson v. Bulso*, 979 F. Supp. 1239 (E.D. Wis. 1997); *Orlando Residence, Ltd. v. Nashville Lodging Co., et al.*, 1996 WL 724915 (Tenn. App. 1996); *Orlando Residence, Ltd. v. Nashville Lodging Co., et al.*, 1999 WL 1040544 (Tenn. App. 1999). Of note, Judge Posner observed that this matter "arises in a context of daunting complexity," which actually qualifies as an understatement. *GP Credit*, 349 F.3d at 978.

for failure to plead with particularity (Docket No. 75); and (3) Orlando's motion for summary judgment (Docket No. 208).

Three more motions are dispositive with respect to GP Credit's claims: (1) Orlando's motion for summary judgment dismissing defendants' counterclaims (Docket No. 119); (2) defendants' motion for partial summary judgment against Orlando on GP Credit's counterclaim for restitution (Docket No. 91); and (3) defendants' motion for partial summary judgment on its claims for slander of title and interference with prospective contractual relationship (Docket No. 161).

The remaining five motions are: (1) defendants' motion for partial summary judgment declaring that Samuel Hardage is personally liable for any judgment entered against Orlando in this matter (Docket No. 171); (2) Hardage's motion to dismiss GP Credit's third-party claims against him (Docket No. 174); (3) Orlando's motion for prejudgment attachment (Docket No. 82); (4) defendants' motion for summary judgment for disbursement of the deposited funds (Docket No. 157); and (5) Orlando's motion for an order imposing Rule 11 sanctions with respect to GP Credit's counterclaim for restitution (Docket No. 109).

**Choice of Law**

This matter was transferred from federal court in Tennessee pursuant to 28 U.S.C. § 1404(a). (Docket No. 29). Accordingly, the Court previously held that it will "apply the state substantive law which the Tennessee district court would have applied." (Docket No. 255 at 12). This means, of course, that the Court will employ Tennessee's choice of law principles. Courts in Tennessee use the "most significant relationship" test from the

-3-

*Restatement (Second) Conflict of Laws* (1971). *See Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). For tort claims, this test provides that the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation. *Id.*; *McDonald v. General Motors Corp.*, 110 F.3d 337, 342 (6th Cir. 1997). The choice will generally be between Tennessee and Wisconsin law.

**Summary judgment**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**Analysis**

**I.     Orlando's fraud/alter ego claims (Docket Nos. 151, 75, and 208)**

Orlando alleges that Kenneth Nelson and NLC engaged in a variety of fraudulent asset transfers to Susan Nelson and GP Credit. Orlando alleges that these asset transfers were made for the purpose of evading and frustrating Orlando's efforts to collect on amounts owed by Nelson and NLC. (Docket No. 67, Count I, ¶¶ 20-22). Orlando further alleges that Nelson and NLC used GP Credit to hide its assets from collection. Therefore, the Court

-4-

should "pierce the corporate veil" and allow Orlando to execute on its judgment against GP Credit. (*Id.*, Count II, ¶¶ 23-24).

The amended complaint mentions a variety of fraudulent asset transfers. However, the briefs focus on only one transaction: the 2001 public sale transfer of NLC's assets to GP Credit, which includes a cause of action referred to as the "Metric Chose."[2] In Case No. 01-C-693, a "quiet title" action under 28 U.S.C. § 1655, Judge Adelman ordered that GP Credit "acquired the Metric chose in action from Nashville Lodging Company in a public sale on May 5, 2001 free and clear of any prior claims by defendant Orlando Residence Ltd." (Defendant's Proposed Findings of Fact, ¶ 18, Docket No. 154). The Seventh Circuit affirmed Judge Adelman's ruling. *See GP Credit Co., LLC v. Orlando Residence*, 349 F.3d 976 (7th Cir. 2003).

Judge Adelman later clarified his judgment to read as follows, in relevant part:

> . . . GP Credit Co. LLC acquired all of the intangible assets of the Nashville Lodging Company, including without limitation a chose in action against Metric Partners Growth Suite Investors, LP and the right to restitution from Orlando Residence Ltd., at a public sale on May 11, 2001 free and clear of any claims by defendant Orlando Residence Ltd., *including without limitation any claim of fraudulent transfer.*

(Case No. 01-C-693, Docket No. 90; Defendant's Proposed Findings of Fact, ¶ 18, Docket No. 154) (emphasis added). On July 29, 2005, the Seventh Circuit affirmed again and stated that "Orlando Residence is fighting a hopeless rearguard action against the proper implementation of our affirmance of the original judgment." (Docket No. 212-2).

---

[2] The Metric Chose is discussed in more detail below, part II, B.

Therefore, defendants argue that Orlando's fraud claim, grounded in the 2001 sale of assets, is precluded by the doctrines of *res judicata* (claim preclusion) and/or collateral estoppel (issue preclusion). In a diversity case, courts apply state law with respect to preclusion principles. *See Semtek v. Lockheed*, 531 U.S. 497, 508 (2001) ("nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court"). Under Tennessee's "most significant relationship" test, the Court will apply Wisconsin law because the May 2001 sale of assets took place in Wisconsin. (Docket No. 154, DPFF, ¶ 13, [Additional Proposed Finding of Fact ¶ 18]).

The elements of *res judicata* (claim preclusion) in Wisconsin are: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction. *See N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). A "final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994). Orlando's fraudulent conveyance claim was already litigated in the quiet title action. All of the elements are met, and application of the doctrine is appropriate. [3]

---

[3] Use of collateral estoppel would also preclude re-litigation of this issue. *See Landess v. Schmidt*, 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim").

-6-

However, to further complicate matters, in 2005, Orlando obtained a favorable judgment on its fraud/alter ego claims against GP Credit in a collateral Tennessee proceeding, a case styled *Orlando Residence, Ltd. v. Nashville Lodging Co., et al.*, Case No. 92-3086-III (Chancery Court, Davidson County). Orlando petitioned the Tennessee court, stating that its fraud/alter ego claims entitled them to the proceeds of an underlying $150,000 cash bond. GP Credit was joined but did not respond to the petition. On June 8, 2005, the Tennessee court awarded judgment to Orlando against GP Credit and directed payment of the Cash Bond proceeds to Orlando. (Docket No. 210, Bulso Decl., ¶ 6, Exhibit 5). The judgment became final and non-appealable on July 8, 2005. Therefore, in its own motion for summary judgment [Docket No. 208], Orlando argues that this later Tennessee judgment is preclusive to the same issues here. That is, Orlando argues that this Court must recognize the Tennessee judgment and enter judgment on the same claims accordingly.

Federal courts are required to give state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738; *Brye v. Brakebush*, 32 F.3d 1179, 1182 (7th Cir. 1994). However, when there are two inconsistent judgments and each would be entitled to preclusive effect, the later judgment controls in a third action. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (citing *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 75-78 (1939)). Presuming that the Tennessee default judgment would be given preclusive effect, it is not entirely clear that it is "later in time" to the judgment in the quiet title proceedings in Wisconsin. The Tennessee default judgment was entered on June 8, 2005 and became final (through expiration of the time for

appeal) on July 9, 2005. In July 2004, Judge Adelman granted GP Credit's motion to clarify his decision (as noted above), but the Seventh Circuit affirmed on July 29, 2005, which is after the Tennessee judgment was entered and became final.

Moreover, enforcement of the Tennessee default judgment would place the Court in the anomalous position of giving greater effect to a foreign judgment than to a judgment issued from this Court. Last-in-time rule notwithstanding, when "one of the conflicting decisions was entered by a court of the state in which the current action is pending, *that decision takes precedence over the court of a sister state*." *See Stuart v. Lilves*, 210 Cal. App. 3d 1215, 1220, 258 Cal. Rptr. 780 (Cal. App. 1st Dist. 1989) (emphasis added); *see also Restatement (Second) Conflict of Laws*, § 114. Full Faith and Credit does not require that courts give "greater force and effect to the judgment of a sister-state than . . . to the judgments of [their] own courts." *Pace v. Pace*, 222 Va. 524, 528, 281 S.E.2d 891 (1981).

Further, courts will not enforce the last-in-time rule when the later court was without jurisdiction to enter judgment. *See Treinies*, 308 U.S. at 78. A defendant "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Insurance Corp. of Ireland, Ltd., et al. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). Defendants argue that the Tennessee court (Case No. 92-3086-III) lacked jurisdiction to enter default judgment against GP Credit with respect to the Bond proceeds. The petition Orlando filed in that case sought an *in rem* judgment against the Bond. The Tennessee court lacked *in rem* jurisdiction over the Bond because the situs of an intangible asset is the domicile of its owner. *See GP Credit*,

-8-

349 F.3d at 980-81. The 2001 quiet title action determined that GP Credit, domiciled in Wisconsin, acquired all of the intangible assets of NLC, including the Bond. Therefore, pursuant to the quiet title action, this Court took *in rem* jurisdiction over the Bond and the Tennessee court could not act to the contrary. *See, e.g., Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922).

Finally, Orlando insists that its "alter ego" claim can go forward, even in the absence of an underlying claim for fraud. However, there must be *some* underlying claim to impose liability on an alter ego claim. *See Fletcher Cyclopedia of Law of Private Corporations* § 41.10 ("A finding of fact of alter ego, standing alone, creates no cause of action"); § 41.28 ("An attempt to pierce the corporate veil is not itself a cause of action, but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract").[4] Aside from the 2001 fraudulent transfer claim, which is barred as a matter of law, Orlando does not dispute that it abandoned its remaining fraud claims. (Docket No. 152 at 17, n.4).[5]

## II. GP Credit's counterclaims (Docket Nos. 119, 91, and 161)

As noted above, GP Credit alleges three counterclaims: (1) Restitution; (2) Interference with a Prospective Business Relationship; and (3) Slander of Title. All of them must be dismissed as a matter of law.

---

[4] The parties argue over whether Oklahoma or Wisconsin law applies to Orlando's piercing claim because GP Credit is incorporated in Oklahoma and does business in Wisconsin. Any difference between the two is not relevant to the Court's decision.

[5] Defendants note that Orlando "testified at its deposition that the 1994 transfer is one of the two transfers of which it now complains." (Docket No. 152 at 17, n.4). The Amended Complaint does not contain any allegations with respect to a transfer of assets in 1994. (Docket No. 67). Therefore, this claim was not properly pleaded under Fed. R. Civ. P. 9(b), and defendants' motion to dismiss for failure to plead fraud with particularity [Docket No. 75] is granted to that extent.

-9-

**A. Restitution**

Orlando obtained a judgment against NLC in Case No. 92-3086-III in Tennessee Chancery Court on September 5, 1995. In executing on that judgment, Orlando purchased land owned by NLC and located in Nashville, Tennessee at a Sheriff's sale for a $100,000 credit against the judgment. That judgment was vacated and reversed by the Tennessee Court of Appeals. Therefore, when the matter came back to the Chancery Court, NLC asked the Chancery Court to vacate the sale of the land, but the Chancery Court denied the motion. (Docket No. 73, Counterclaim - Restitution). Subsequently, the matter went through more appeals in the Tennessee court system. Most recently, the judgment was affirmed by the Tennessee Supreme Court on December 27, 2006. (Docket No. 256-1).

GP Credit[6] seeks restitution in the amount of the fair market value of the land taken by the execution sale. GP Credit contends that the Chancery Court did not have subject matter jurisdiction because the entity that obtained the judgment in Case No. 92-3086-III did not actually have standing to pursue the claim.[7] GP Credit pressed this argument in Tennessee and was unsuccessful. Most recently, the Tennessee Court of Appeals rejected this argument as a matter of course and determined that its prior rulings on the issue were the "law of the case." (Docket No. 249-2, pp. 6-7).

GP Credit's restitution claim is creative, perhaps even diabolical, but it is also barred by the *Rooker-Feldman* doctrine. "At its core, the [*Rooker-Feldman*] doctrine is a

---

[6] GP Credit acquired the right to pursue this cause of action from NLC at the May 11, 2001 sale of assets.

[7] GP Credit alleges that a different Orlando partnership owned the cause of action. (Docket No. 73, First Cause - Restitution, ¶ 11).

-10-

recognition of the principle that the inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996). To determine whether the doctrine applies to GP Credit's restitution claim, the Court must determine "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Id.* at 510. Stated another way, if the injury "resulted from the state court judgment itself, then *Rooker-Feldman* controls, and the lower federal courts lack jurisdiction over the claim. It does not matter that the state court judgment might be erroneous or even unconstitutional." *Id.*

As part of its restitution claim, GP Credit demands a declaration that "the September 5, 1995 judgment awarded to [Orlando] against NLC and Nelson and all other judgments and orders in Chancery Court Case No. 92-3086-III *were and are void for lack of subject matter jurisdiction*." (Docket No. 73, Counterclaims and Crossclaims, Demand for Judgment, ¶ 1) (emphasis added). GP Credit's alleged injury – the loss of its land – directly resulted from adverse judgments in Tennessee, including that court's refusal to set aside the judicial sale. This claim is barred under *Rooker-Feldman*.

### B. Interference with prospective business relationship

One of the assets GP Credit acquired from NLC on May 11, 2001 was a claim against Metric Partners Growth Suite Investors, LP. The parties refer to this claim as the "Metric Chose." After Judge Adelman quieted title to the Metric Chose and the Seventh Circuit affirmed, GP Credit tried to negotiate a settlement with Metric to resolve any claims involving the Metric Chose. Metric offered to pay $650,000 to settle the Metric Chose

-11-

litigation, contingent upon the entry of an order by the Tennessee court dissolving or modifying an existing receivership order. This would permit Metric to settle directly with GP Credit without the necessity of Orlando's consent under the receivership.

On June 30, 2004, the Tennessee Court of Appeals affirmed a judgment that Metric breached a 1993 settlement agreement with NLC. However, that court also found that NLC failed to mitigate its damages. Therefore, the court found that no damages should be awarded to NLC. As a result, Metric withdrew its $650,000 settlement offer and subsequently settled with GP Credit for $150,000.

GP Credit alleges that Orlando intentionally and improperly interfered with the settlement of the Metric Chose by asserting a right to the proceeds of the Metric Chose in Tennessee. Under Tennessee law,[8] to prevail on a tortious interference claim, a plaintiff must satisfy the following elements: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

---

[8] When the basis for an interference claim is the filing of a legal action, the law of the state where the interfering action was filed or maintained governs a claim for interference with contract. *See Restatement (Second) of Conflicts*, § 145; *Corning, Inc. v. SRU Bisystems, LLC*, 292 F. Supp. 2d 583, 585 (D. Del. 2003). Application of Wisconsin law to GP Credit's claim would not result in a different outcome. *See, e.g., Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999) (listing elements)

Even assuming that Orlando had a general sense and understanding that GP Credit was attempting to settle the Metric Chose litigation, GP Credit fails to marshal evidence demonstrating that Orlando intentionally interfered with those settlement efforts. Ultimately, GP Credit takes issue with Orlando's opposition to GP Credit's efforts to vacate the receivership in Tennessee. Obviously, that receivership was in place long before Judge Adelman quieted title to the Metric Chose and GP Credit initiated settlement discussions. After Judge Adelman quieted title, Orlando was merely protecting its interests in the Tennessee litigation, not engaging in a campaign to interfere with GP Credit's efforts to settle the Metric Chose litigation. This is true even assuming that Orlando's insistence in Tennessee that it was entitled to the proceeds of the Metric Chose was in direct conflict with Judge Adelman's ruling.[9]

### C. Slander of title

GP Credit asserts that Orlando slandered its title to the intangible assets acquired from NLC on May 11, 2001.[10] All of the allegedly slanderous statements took place in the context of judicial proceedings, either in the parallel litigation in Tennessee or in the instant case, now being litigated in Wisconsin. (Docket No. 73, Counterclaim, ¶ 23). The parties expend a great deal of effort fighting over whether Tennessee or Wisconsin law applies to this claim. Therefore, the Court will consider GP Credit's claims under Tennessee and Wisconsin law.

---

[9] The Court also doubts that the settlement of a civil lawsuit constitutes a "business relationship" for purposes of this claim. *See, e.g., Fox v. Country Mutual Ins. Co.*, 7 P.3d 677, 690 (Ore. App. 2000) ("Protection of a prospective interest in the outcome of civil litigation does not comport with [the] essential purpose [of the tort]. A lawsuit is, by its nature, an involuntary relationship").

[10] GP Credit alleges that Orlando slandered the Metric Chose, its "Restitution Judgment," and the proceeds to a bond being held in Tennessee.

-13-

Under Tennessee law, "statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged, and therefore cannot be used as a basis for a libel action for damages." *Jones v. Trice*, 360 S.W.2d 48, 50 (Tenn. 1962) (affirming dismissal of action for libel when allegedly false statement made in a motion for new trial). The privilege applies even if the statements are "known to be false or even malicious." *Id.* at 50; *see also Lambdin Funeral Service, Inc. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978) ("This absolute privilege holds true even in those situations where the statements are made maliciously and corruptly"). Therefore, GP Credit's slander of title claim is barred under Tennessee law.

Under Wisconsin law, to state a slander of title claim, GP Credit must demonstrate that Orlando made a publication which: (1) results in an injurious falsehood or disparagement of property and includes matters derogatory to the plaintiff's title or business in general, calculated to prevent others from dealing with the plaintiff, or to interfere with his relations with others to his disadvantage; (2) has been communicated to a third person; (3) plays a material or substantial part in inducing others not to deal with the plaintiff; and (4) results in special damage. *See Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902, 419 N.W.2d 241 (1988); *see also* Wis. Stats. § 706.13.[11]

Predictably, the parties dispute the veracity of the allegedly slanderous statements made by Orlando in its pleadings. True or false, to succeed on its slander claim, GP Credit

---

[11] Wisconsin law recognizes a conditional judicial privilege when (1) the pleader has a reasonable ground for believing the truth of the pleading and (2) the statements in the pleading are reasonably calculated to calculate the privileged purpose. *See Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 904, 419 N.W.2d 241 (1988).

-14-

must come forward with evidence that the publication induced others not to conduct business with them. There is no evidence in the record that Orlando's allegedly slanderous pleadings played a material and substantial part in inducing any third-parties to refrain from dealing with GP Credit.[12] Similarly, as discussed above, there is no evidence that Orlando's pleadings were calculated to prevent others from dealing with GP Credit or made to interfere with GP Credit's relations with third-parties, Metric included. Therefore, GP Credit's slander claim cannot withstand summary judgment.

### III. Motion for Rule 11 sanctions (Docket No. 109)

Orlando moves for sanctions under Fed. R. Civ. P. 11[13] on the grounds that GP Credit's restitution claim is frivolous. As discussed above, GP Credit's claim for restitution is barred by the *Rooker-Feldman* doctrine, but the Court does not agree that the claim is frivolous. Given the long and contentious history of this case, the Court is hesitant to impose sanctions. An award of sanctions is unlikely to deter either party from pursuing claims in this or any other forum, frivolous or not. *See Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (sanctions under Rule 11 are discretionary, and should be imposed sparingly).

---

[12] This is true even with respect to the settlement of the Metric Chose. There are no allegations or evidence that any Tennessee pleadings slandered the Metric Chose, but even if they did, those claims would be barred by Tennessee's absolute judicial privilege. *See Restatement (Second) of Conflicts of Law*, § 149 (the "local law of the state where the publication occurs" applies to an action for defamation or slander). GP Credit's slander claim is governed by Wisconsin law only with regard to allegations made in Wisconsin, *i.e.*, the allegations Orlando made in this lawsuit. There is no proof that any pleading made in Wisconsin played a part in influencing Metric to avoid settlement of the Metric Chose.

[13] Orlando also requests sanctions under 28 U.S.C. § 1927 (attorney liability for excess costs), but the analysis is the same.

-15-

**IV. Attachment/disbursement of deposited funds (Docket Nos. 82, 157)**

In light of the foregoing, Orlando's motion for prejudgment attachment (Docket No. 82) is moot, and GP Credit's motion for disbursement of funds (Docket No. 157) will be granted. These funds ($150,000) are the proceeds of GP Credit's settlement of the Metric Chose. The funds were deposited into the Court only to secure a potential judgment against GP Credit. (Docket No. 79). The parties do not dispute that GP Credit is entitled to these funds.[14]

**Conclusion**

Applying the summary judgment standards in the instant case, the Court finds no dispute as to any of the material facts as they relate to the parties' substantive claims for relief. Therefore, the parties' claims must be dismissed and judgment will be entered accordingly.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment dismissing Orlando's claims [Docket No. 151] is **GRANTED**;

2. Defendants' motion to dismiss Orlando's complaint for failure to plead fraud with particularity [Docket No. 75] is **GRANTED** to the extent discussed in the foregoing opinion;

---

[14] Because all of the claims are dismissed, the motions regarding Samuel Hardage are moot.

3. Orlando's motion for summary judgment on its claims against the defendants [Docket No. 208] is **DENIED**;

4. Orlando's motion for summary judgment dismissing the defendants' claims [Docket No. 119] is **GRANTED**;

5. GP Credit's motions for partial summary judgment on its claims against Orlando [Docket Nos. 91 and 161] are **DENIED**;

6. The motions relating to the claims against Samuel Hardage [Docket Nos. 171 and 174] are **DENIED** as moot;

7. Orlando's motion for prejudgment attachment [Docket No. 82] is **DENIED** as moot;

8. GP Credit's motion for disbursement of deposited funds [Docket No. 157] is **GRANTED**. The Clerk of Court is directed to return the funds plus interest to GP Credit [See Docket Nos. 77-79, 12/3/04 Receipt # 101 119867 in the amount of $150,000];

9. Orlando's motion for Rule 11 sanctions [Docket No. 109] is **DENIED**; and

10. This matter is **DISMISSED** in its entirety. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2007.

**SO ORDERED,**

**s/ Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**